Raymond J. DONOVAN, Secretary of
Labor, Plaintiff,

v.

Loran W. ROBBINS, et al., Defendants,

Raymond J. DONOVAN, Secretary of
Labor, Plaintiff,

v.

Allen M. DORFMAN, et al., Defendants.

Nos. 78 C 4075, 82 C 7951.

United States District Court,
N.D. Illinois, E.D.

Oct. 5, 1983.

Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., David H. Feldman, Assoc. Sol. for Sp. Lit., Richard O. Patterson, Lynette Diehl-Lang, William Zuckerman, Virginia Block, Christopher G. Lehmann, Washington, D.C., Leonard Grossman, Kevin Koplin, Dept. of Labor, Chicago, Ill., for plaintiff.

Edward L. Foote, R. Mark McCareins, Winston & Strawn, Michael Rovell, Jenner & Block, Chicago, Ill., for Amalgamated Ins. Agency Services, Federal Computer Systems, Inc., Health Plan Consultants Service, Inc., Prescription Plan, Inc. and Estate of Allen M. Dorfman.

## MEMORANDUM OPINION

WILL, District Judge.

These cases are before us on the motion of the Secretary of Labor (the Secretary),

pursuant to Fed.R.Civ.P. 12(f), to strike certain defenses in the Amended Answer filed in *Donovan v. Robbins,* 78 C 4075 ("78 C 4075"), by several defendants, hereinafter to be referred to collectively as "Amalgamated" or "the Amalgamated defendants"[1] and to strike certain affirmative defenses in the Answer filed by those defendants in *Donovan v. Dorfman,* 82 C 7951 ("82 C 7951"). For the reasons which follow, that motion is granted in part and denied in part.

The Secretary has invoked our jurisdiction under 29 U.S.C. § 1132(e)(1). He contends that certain current and former trustees and other alleged fiduciaries of the Central States, Southeast and Southwest Areas Health and Welfare Fund (the Plan) breached certain of the loyalty obligations imposed by sections 404 and 406 of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1104 and 1106. In the Second Amended Complaint in 78 C 4075, the Secretary alleges that the Amalgamated defendants, who are alleged to be parties in interest under section 3(14)(H) of ERISA, 29 U.S.C. § 1002(14)(H), and/or, by virtue of their alleged "special relationship" with the Plan, fiduciaries under section 3(21) of ERISA, 29 U.S.C. § 1002(21), profited from transactions prohibited by section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D).

The Secretary's Amended Complaint in 82 C 7951 contains a similar allegation of profit from transactions proscribed by section 406(a)(1)(D) of ERISA (Counts I and III). The Secretary also alleges that the Amalgamated defendants "aided and abetted" breaches by other fiduciaries of the Plan of their duty of loyalty and of the "prudent man" requirement imposed by section 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. § 1104(a)(1)(A) and (B) (Counts II, IV and V). The Amalgamated defendants, allegedly fiduciaries of the Plan, are also charged with having personally breached the duties of loyalty and of prudent dealing by their operation of Amalgamated and of having violated certain duties to prevent breaches of co-fiduciaries which are imposed by section 405 of ERISA, 29 U.S.C. § 1105 (Count VI). And, finally, this Amended Complaint challenges the permissibility under section 406(a)(1)(D) of ERISA of a proposed acquisition by the Plan of certain Amalgamated assets (Count VII). The amended complaints at issue in both cases seek various forms of equitable relief.

In response to these claims, the Amalgamated defendants have raised a variety of traditional equitable and other defenses, which, the Secretary contends, are impertinent or immaterial and unresponsive or otherwise improper in these proceedings of the Secretary for equitable relief pursuant to ERISA. Amalgamated interposes the following challenged defenses: (1) that the Second Amended Complaint in 78 C 4075 does not state a claim upon which relief may be granted (SECOND DEFENSE); that Counts I through VI of the Amended Complaint in 82 C 7951 do not state a claim upon which relief may be granted against certain of the Amalgamated defendants (FIRST and SECOND AFFIRMATIVE DEFENSES); and that Count VI of the 82 C 7951 complaint does not state a claim upon which relief may be granted (THIRD AFFIRMATIVE DEFENSE); (2) that the Secretary is not entitled to equitable relief because neither he nor the Plan will suffer any irreparable injury from dealings between Amalgamated and the Plan (78 C 4075, FOURTH DEFENSE) and, further, that equitable relief should be denied because its award would work an undue hardship on Amalgamated and the Plan (78 C 4075, SIXTH DEFENSE); (3) that the Secretary has an adequate remedy at law with respect to any possible future violations of ERISA (78 C 4075, FIFTH DEFENSE); (4) that Amalgamated's dealings with the Plan

---

1. Before us in this motion are the responsive pleadings of defendants James P. Dorfman and David A. Dorfman, not individually but solely as executors of the Estate of Allen M. Dorfman, Rose Dorfman, Myer Breen, Sol C. Schwartz, Amalgamated Insurance Agency Services, Inc., Federal Computer Systems, Inc., Health Plan Consultants Service, Inc. and Prescription Plan, Inc.

have been objectively fair and that Amalgamated's services to the Plan have been excellent (82 C 4075, the second[2] FIFTH AFFIRMATIVE DEFENSE); (5) that equitable relief is not available to the Secretary by virtue of the doctrine of unclean hands (72 C 4075, THIRD DEFENSE; 82 C 7951, the first FIFTH AFFIRMATIVE DEFENSE) and laches (82 C 7951, FOURTH AFFIRMATIVE DEFENSE); (6) finally, the Amalgamated defendants state that the complaint against them is "a sham" (82 C 7951, SIXTH AFFIRMATIVE DEFENSE).

A motion under Fed.R.Civ.P. 12(f)[3] to strike portions of a responsive pleading serves the limited purpose of excluding irrelevant material from pending litigation. Issues that are raised in a responsive pleading which are not in fact responsive to the plaintiff's cause of action need not be allowed to complicate and impede the progress of pre-trial discovery. *See generally* 5 C. Wright and A. Miller, Federal Practice and Procedure § 1380 (1969). In the Seventh Circuit in particular, vague allegations that seek to raise defenses of dubious legal merit are subject to being stricken for "indefiniteness." *See United States v. 416.81 Acres of Land,* 514 F.2d 627, 629–32 (7th Cir.1975) (approving the striking of vague and conclusory allegations of bad faith in answer to a complaint in condemnation notwithstanding the existence of authority suggesting that exceptional or egregious bad faith might be a defense).

■ The 12(f) motion is not, however, a device for forcing revisions in or recaptioning of portions of pleadings, an exercise which, it has often been noted, does nothing to advance the progress of litigation. *See e.g. City of Chicago v. Allen Bradley Co.,* 32 F.R.D. 448, 450 (N.D.Ill.1963). Therefore, to the extent assertions that are labeled "defenses" put into issue relevant and substantial legal and factual questions, they are "sufficient" and may survive a motion to strike even if they might not totally bar the plaintiff's claim. *See e.g. Doble v. Standard Brands,* 11 F.R.D. 200, 201–202 (D.Mass.1951); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1381 (1969). Where the Secretary and Amalgamated, for whatever reasons, have both failed adequately to address certain of the substantive legal questions underlying this motion to strike, we are particularly reluctant to rule on the absolute or legal sufficiency of a "defense" that, at least, constitutes a pertinent and material response to the complaint.

*The "Failure to State a Claim" Defenses*

The Secretary would have us review the amended complaints against the Amalgamated defendants, determine that the complaints are facially unobjectionable and, accordingly, hold precluded any present or future attack on their sufficiency. *See e.g. Lehman Trading Corp. v. J & H Stolow, Inc.,* 184 F.Supp. 21, 22 (S.D.N.Y.1960) (defense of failure to state a claim serves as invitation to plaintiff to test sufficiency of complaint by Rule 12(f) motion).

In response, Amalgamated proffers, without citation to any authority, two possible bases for the legal insufficiency of the Secretary's complaint:

There is substantial question as to whether the Secretary can assert claims against Amalgamated and the other defendants now that similar claims have been asserted by both the Fund and the Trustees. The Secretary's standing is derivative to that of the Fund. [footnote omitted] If the Fund has now filed its action in its own name relating to these transactions,

---

2. Inexplicably, Amalgamated has included two defenses labeled "FIFTH AFFIRMATIVE DEFENSE" in its Answer in 82 C 7951. We refer to these defenses, respectively, as the "first" and "second" FIFTH AFFIRMATIVE DEFENSE based on their relative positions on the page.

3. Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

the derivative claim by the Secretary is surplusage.

The lynchpin of the Secretary's Complaint is the allegations that Amalgamated and the other defendants are fiduciaries. Clearly, if they were not fiduciaries then their obligations are much more limited. Both Judge McMillen and this Court have found that the defendants are not fiduciaries.

Defendants respectfully suggest that the Court either deny the Secretary's motion to strike this affirmative defense without prejudice to the Secretary's right to reraise the motion prior to trial, or that the Court take this matter under advisement and defendants will file in short course a motion raising these deficiencies and others which are attendant to the Complaint.

Amalgamated's "Memorandum" at 6–7.

■ The first of Amalgamated's unsupported suggestions, that the Secretary has only "derivative standing" to challenge ERISA violations, appears implausible since the statutory authority for the Secretary's cause of action, section 502(a)(2) and (5) of ERISA, 29 U.S.C. § 1132(a)(2) and (5), contains no such facial limitation on the Secretary's right to relief.

The second of Amalgamated's suggestions, that the Amalgamated defendants are not "fiduciaries" as that term is defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A),[4] highlights a difficult aspect of the Secretary's case. Judge Flaum, reasoning that it was unlikely that the Secretary could demonstrate that Amalgamated exercised the requisite "control" over the Plan, has already held that the Secretary does not have a reasonable likelihood of success with respect to this element of his cause of action against Amalgamated. *Donovan v. Robbins,* 558 F.Supp. 319, 328 (N.D.Ill.1983). But the question whether Amalgamated exercised control over the Plan is a factual one, singularly ill-suited, it appears, to resolution on a challenge to the legal sufficiency of the complaint.

Whether or not we strike the defenses and affirmative defenses challenging the sufficiency of the complaint, the same factual and legal questions will remain in the case. Why the counsel for the Amalgamated defendants, given their expressed desire to avoid unnecessary pleadings, chose to file "defenses" and "affirmative defenses" challenging the sufficiency of the pleadings after denying their allegations is not clear. Neither of the grounds asserted in their brief for doing so relates to the question of whether or not the complaint is adequate but rather to (1) the Secretary's standing to bring the actions or (2) the validity of the Secretary's allegations that the Amalgamated defendants were "fiduciaries" under ERISA. A "defense" or "affirmative defense" that a complaint fails to state a claim is an anomaly. If defendants desired to raise the adequacy of the complaint, the appropriate procedure would have been a motion under Fed.R.Civ.P. 12(b)(6). The proper assertion of an "affirmative defense" under Fed.R.Civ.P. 8(c) does not include an unelucidated challenge to the adequacy of the complaint as a cursory reading of Rule 8(c) demonstrates. The so-called "defenses" and "affirmative defenses" are surplusage and inappropriate and the motion to strike them will be granted. Moreover, as is apparent from the foregoing discussion, Amalgamated has articulated no basis for a motion challenging the legal sufficiency of the pleadings. *See* Fed.R. Civ.P. 12(c).

*Balancing the Equities in a Complaint for Statutory Injunctive Relief*

Amalgamated has raised as defenses to the Secretary's prayers for injunctive and

---

**4.** 29 U.S.C. § 1002(21)(A) provides in part:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders invest-

ment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

other equitable relief the contentions (1) that the imposition of equitable relief would be an undue hardship on Amalgamated and the participants of the Plan and (2) that the Secretary cannot demonstrate that the Plan will suffer irreparable injury as a result of the actions complained of. The Secretary argues that these contentions, which are concededly pertinent in the traditional equitable setting, *see e.g. Pratte v. NLRB,* 683 F.2d 1038, 1041 (7th Cir.1982), have no place where as here, *see* section 502(a)(5)(A) of ERISA, 29 U.S.C. § 1132(a)(5)(A), injunctive relief is authorized by statute in furtherance of an important public policy. In such a case, the Secretary argues, injunctive relief is mandatory on finding a past violation of the statute and a reasonable likelihood of future violations. He cites *Commodity Futures Trading Commission v. Hunt,* 591 F.2d 1211, 1219–20 (7th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979) and *Securities and Exchange Commission v. Advance Growth Capital Corp.,* 470 F.2d 40, 53–54 (7th Cir. 1972).

In denying preliminary injunctive relief in this case, Judge Flaum declined to apply the rigid two part test which the Secretary derives from *Hunt,* and *Advance Growth:*

> This court does not agree that the Secretary has a different burden of persuasion here than any other litigant seeking to have a court exercise the broad powers of a chancellor in equity on a motion for preliminary injunction. Although the *Hunt* and *Advance Growth* decisions may

establish that different standards apply when a government agency is seeking a permanent injunction enjoining future violations of a statute after a finding of a past violation, those cases do not establish that the traditional standards on a motion for preliminary injunction are inapplicable here. [footnote omitted]

■ Our reading of *Hunt* and *Advance Growth* convinces us that, even where there has been a prior Congressional determination that equitable relief should be available to redress specified statutory violations, the traditional equitable considerations are pertinent to the determination whether permanent injunctive relief should be imposed in a particular case. The Supreme Court in *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944),[5] has roundly affirmed that the traditional equitable analysis is pertinent in the statutory context:

> The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not believe that such a major departure from that long tradition as is here proposed should be lightly implied. We do not think the history or language of § 205(a) compel it.

**5.** The statute before the Supreme Court in the *Hecht* case was Section 205(a) of the Emergency Price Control Act of 1942, which provided: Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and *upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices* a permanent or temporary injunction, restraining order or other order *shall* be granted without bond. [emphasis added] Identical language, which facially limits the discretion of a court to refuse injunctive relief on

application by a government regulatory agency is found in section 42(e) of the Investment Company Act, 15 U.S.C. § 80a–41(e), which was at issue in *Securities and Exchange Commission v. Advance Growth Capital Corp.,* 470 F.2d 40, 53–54 (7th Cir.1972). And section 6(c) of the Commodity Exchange Act, 7 U.S.C. § 13a–1, before the Seventh Circuit in *Commodity Futures Trading Commission v. Hunt,* 591 F.2d 1211, 1220 (7th Cir.), *cert. denied,* 442 U.S. 921 [99 S.Ct. 2848, 61 L.Ed.2d 290] (1979), makes an injunction mandatory "upon a proper showing."
By contrast, section 502(a)(5)(A) of ERISA, 29 U.S:C. § 1132(a)(5)(A), merely authorizes the Secretary to seek injunctive relief. It does not delimit the discretion of the Court to act on the Secretary's prayer.

It should be noted, moreover, that § 205(a) governs the procedure in both federal and state courts. For § 205(c) gives the state courts concurrent jurisdiction with federal district courts of civil enforcement proceedings. It is therefore even more compelling to conclude that, if Congress desired to make such an abrupt departure from traditional equity practice as is suggested, it would have made its desire plain.

321 U.S. at 329–30, 64 S.Ct. at 591–92.

Following *Hecht* the Seventh Circuit has cautioned that the traditional equitable discretion must, in the statutory setting, be exercised to effectuate the declared Congressional objectives:

> [W]hile trial courts should properly be accorded wide latitude in fashioning equitable remedies in cases of this type, it is the inescapable function of the appellate court to make sure that the fashioned remedy meets that criterion in accordance with the regulatory scheme and adequately serves the particularized needs of the case before the court. Although injunctive relief is never automatic upon the showing of a violation of the Act or regulations [citation omitted], we should not hesitate to reverse an order denying such relief when it is evident that the trial court's discretion has not been exercised to effectuate the manifest purpose of the specific legislation involved.

*Hunt, supra,* 591 F.2d at 1219–20 (*quoting Advance Growth, supra,* 470 F.2d at 531).

Where Congress has determined that injunctive relief is appropriate to protect against possible future violations of a regulatory enactment and where it has been determined not only that past violations have occurred, but that future ones are reasonably likely, *Advance Growth* and *Hunt* teach that a finding of irreparable harm to the plaintiff may follow. *See Hunt,* 591 F.2d at 1220. But it would be anomalous to read these cases as banishing to the hinterlands the traditional equitable analysis. In light of the Congressional determination that "the continued well-being and security of millions of employees and their dependents are directly affected by these plans; they are affected with a national public interest," section 2(a) of ERISA, 29 U.S.C. § 1001(a), we will not impose some form of injunctive or other equitable relief where it is apparent that such relief would work an undue hardship on Amalgamated and the Plan and thereby, indirectly, on the Plan participants themselves.

As informed by the Congressional policy determinations, the traditional equitable balancing of relative harms is essential to evaluating the propriety of imposing the equitable relief authorized by section 502(a)(5)(A) of ERISA, 29 U.S.C. § 1132(a)(5)(A); these balancing considerations have properly been raised in Amalgamated's answers and may stand.

### Exhaustion of Legal Remedies

This closely related defense to the Secretary's prayer for equitable relief has also been raised in Amalgamated's responsive pleadings. The Secretary advocates striking this defense on the theory that he "does not have any legal remedies available under ERISA" —a position that is belied by the statute itself. *See* Sections 502(a)(2) and 409 of ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109. *And see Bobo v. 1950 Pension Plan,* 548 F.Supp. 623, 626 (W.D.N.Y.1982) (the "other ... remedial relief" authorized by 29 U.S.C. § 1109 includes damages for mental anguish); *Gilliam v. Edwards,* 492 F.Supp. 1255, 1266–67 (D.N.J.1980) (29 U.S.C. § 1109 authorizes legal relief).

As our discussion with respect to equitable balancing makes clear, where a legal remedy is adequate or where such a remedy would better protect the interests of Plan participants than would equitable relief, we have the discretion and the obligation to prefer that remedy which best accomplishes the policy objectives of ERISA. Therefore, the defense that the Secretary has an adequate remedy at law is proper and may stand.

### Absence of Harm to the Plan: The Quality of Amalgamated's Services

As an "affirmative defense" in the amended complaint in 82 C 7951, Amalgamated asserts:

The modification of the contract was fair and equitable to the Plan. Amalgamated's services throughout the period has [sic] approached perfection.

■ The Secretary has alleged in Count VI of his amended complaint that these defendants "aided and abetted" alleged violations of the "prudent man" rule codified in section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B). Obviously, whether the Plan suffered some injury as a result of its dealings with Amalgamated is relevant and responsive to the question whether alleged fiduciaries of the Plan behaved with care and prudence as required by the statute. *See e.g. Donovan v. Cunningham,* 541 F.Supp. 276, 287 (S.D.Tex.1982). Accordingly, this affirmative defense may stand.

### Unclean Hands and Laches of the Secretary

Amalgamated seeks by its THIRD DEFENSE in 78 C 4075 and its FOURTH and first FIFTH AFFIRMATIVE DEFENSES in 82 C 7951 to raise against the Secretary the traditional equitable defenses of unclean hands and laches. The Secretary responds that, as a matter of law, neither defense is available against him.

The Amalgamated defendants have repeatedly, in the course of the Secretary's investigations of their dealings with the Plan, sought to demonstrate the Secretary's bad faith. Writing in 1980 in a *Bivens* action brought against the Secretary by certain of these defendants and others to challenge the Secretary's investigation, Judge Bua concluded:

> In light of the Secretary's statutory authority to conduct ERISA investigations, 29 U.S.C. § 1134, the admitted relationship between Amalgamated Insurance Agency Services, Inc., and the Fund, *See* amended complaint ¶ 2, and the evidence adduced at a hearing in *Marshall v. Amalgamated Insurance Agency Services, Inc.,* it is inconceivable to this court that a lawful investigation by the Department of Labor could be characterized as a conspiracy to harm the plaintiffs and motivated in an institutional sense by hostility to Allen Dorfman.

*Dorfman v. Lippe,* No. 77 C 3635 slip op. at 12 (N.D.Ill. February 26, 1980) (granting motion to dismiss for failure to state a claim).

■ Judge Bua's opinion is *res judicata* with respect to any bad faith in the Secretary's pre-1980 investigation of the plaintiffs in *Dorfman v. Lippe.* And Judge Bua's conclusions, reached after an extended hearing, are probative circumstantial evidence that the Department of Labor does not now have any institutional animus against the Amalgamated defendants, notwithstanding the present conclusory contentions to the contrary. *Cf. United States v. 416.81 Acres of Land, supra,* 514 F.2d at 629–32.

Moreover, there are substantial policy considerations militating against inhibiting the enforcement of an important regulatory scheme based on some alleged "unclean hands" of the agency charged with the enforcement. *See United States v. McIntire,* 370 F.Supp. 1301, 1303 (D.N.J.1974) (FCC's "unclean hands" as a result of alleged discriminatory animus held insufficient defense). *Cf. United States v. City of Milwaukee,* 395 F.Supp. 725, 727 (E.D.Wis. 1975) (discrimination in government no bar to government's enforcement of Title VII of Civil Rights Act); *United States v. Philadelphia Electric Co.,* 351 F.Supp. 1394, 1398 (E.D.Pa.1972) (same). *See generally Pan American Petroleum and Transport Co. v. United States,* 273 U.S. 456, 506, 47 S.Ct. 416, 424, 71 L.Ed. 734 (1927).

We therefore conclude that the conclusory and improbable allegations of "unclean hands" of the Secretary have no place in these lawsuits. The THIRD DEFENSE of the Amended Answer in 78 C 4075 and the first FIFTH AFFIRMATIVE DEFENSE in the Answer in 82 C 7951 are stricken.

The defense of laches, also raised by Amalgamated in 82 C 7951, poses analogous considerations. Although the Secretary would have it that the defense of laches is unavailable against a government agency seeking to enforce regulatory provisions in

the public interest, there is actually some question as to the applicability of the doctrine. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 135, 58 S.Ct. 785, 788, 790, 82 L.Ed. 1224 (1938), and *United States v. Weintraub,* 613 F.2d 612, 618–19 (6th Cir. 1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), state the traditional view that the negligence of public officials in delaying to file suit should not be allowed to prejudice important public rights. *See also United States v. Firestone Tire & Rubber Co.,* 374 F.Supp. 431 (N.D. Ohio 1974); *California v. United States,* 512 F.Supp. 36, 40 (N.D.Cal.1980).

At the same time, however, there is now substantial authority that the closely related doctrine of estoppel may properly be asserted against the government—at least in its capacity as property holder. *See e.g. United States v. Ruby Co.,* 588 F.2d 697, 701–705 (9th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1978). It is perhaps a harbinger of a "similar development or evolution" of the rule with respect to laches, *see id.* at 705 n. 10, that other courts, even in a regulatory context, have in fact applied the laches doctrine to government agency delays. *See Costello v. United States,* 365 U.S. 265, 281–85, 81 S.Ct. 534, 542–45, 5 L.Ed.2d 551 (1961). *See also Stuyvesant Insurance Co. v. INS,* 407 F.Supp. 1200, 1207 (N.D.Ill.1975) (alleged laches in enforcement of immigration bonds).[6]

Significantly, however, Amalgamated's Memorandum in response to this motion to strike makes no attempt whatsoever to explain or elucidate the basis for asserting in this case that the Secretary "has been guilty of laches." In fact, the Memorandum does not even refer to laches. In light of the substantial policy against raising laches as a ban to a belated effort to protect the public interest and in light of the fact that Amalgamated now makes no effort to defend or explain the basis for this conclusorily stated and indefinite defense,

we grant the Secretary's motion to strike the FOURTH AFFIRMATIVE DEFENSE in the Answer in 82 C 7951. As we have noted, we are without any information as to the possible basis for the laches defense in this case; there is no related instance in which this defense has been raised and considered. Since there is some indication in the cases that the defense may be viable against a government agency, we strike the FOURTH AFFIRMATIVE DEFENSE in 82 C 7951 without prejudice to Amalgamated's pleading again with the appropriate degree of specificity. *See Durham Industries, Inc. v. North River Insurance Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979).

### *"Sham" Complaint*

For its SIXTH AFFIRMATIVE DEFENSE in 82 C 7951, Amalgamated states that "[t]he complaint is a sham." Whether this affirmative defense is taken as a challenge to the legal sufficiency and factual basis for the complaint or whether it is taken as an attack upon the good faith of the Secretary, it is apparent that this defense adds nothing but vitriol to the answer. It is therefore surplusage and should be stricken.

### *Conclusion*

For the reasons stated, the SECOND DEFENSE of the Amended Answer in 78 C 4075; the THIRD DEFENSE of the Amended Answer in 78 C 4075; the FIRST AFFIRMATIVE DEFENSE in the Answer in 82 C 7951; the SECOND AFFIRMATIVE DEFENSE in 82 C 7951; the THIRD AFFIRMATIVE DEFENSE in 82 C 7951; the first FIFTH AFFIRMATIVE DEFENSE in 82 C 7951; and the SIXTH AFFIRMATIVE DEFENSE in 82 C 7951 are stricken with prejudice. The FOURTH AFFIRMATIVE DEFENSE in 82 C 7951 is stricken, but without prejudice to Amalgamated's repleading with greater specificity. In all other respects, the motion of the Secretary to strike certain of Amalgamat-

---

**6.** However, there is no case of which we are aware in which the laches defense has been

*successfully* asserted against the government.

ed's defenses and affirmative defenses is denied. An appropriate order will enter.