In re Jack Thomas **BOYD** and Leann Bryan Boyd, d/b/a Boyd Carpets, Debtors.

**FIRST COMANCHE BANK, Plaintiff,**

v.

Jack Thomas **BOYD** and Leann Bryan Boyd, d/b/a Boyd Carpets, Defendants.

Bankruptcy No. 187–10286–7.
Adv. No. 188–1044.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

March 3, 1989.

Marc McBeath, Harris & McBeath, Abilene, Tex., for the Bank.

Thomas M. Wheeler, Abilene, Tex., for trustee.

## MEMORANDUM OF OPINION ON RECOUPMENT

JOHN C. AKARD, Bankruptcy Judge.

Under the theory of recoupment, First Comanche Bank (Bank) seeks to recover funds presently in the hands of the Trustee-in-Bankruptcy.

### FACTS [1]

For many years, Jack Thomas Boyd, one of the Debtors, operated a business known as Boyd Carpets in Comanche, Texas. During that time he was a customer of the Bank. On April 30, 1987 he borrowed $9,461.00 from the Bank. He used the entire proceeds of the loan to pay the premium on his worker's compensation insurance policy.[2] The note was due July 29, 1987 and subsequently extended to October 16, 1987 and then to April 27, 1988.

On August 5, 1987 Mr. Boyd wrote to Kemper Insurance Company advising them that he had gone out of the carpet business on August 3, 1987 and requested that the policy be canceled. He instructed that any return premium be sent to his insurance agent in Comanche, Texas.

Mr. and Mrs. Boyd filed for relief under Chapter 7 of the Bankruptcy Code on September 3, 1987 and received a discharge on January 25, 1988. Subsequent to the filing of the bankruptcy the Debtors received a refund from Kemper Insurance in the amount of $5,552.00 which they turned over to Stanley Wright, the Trustee-in-Bankruptcy in this proceeding.

The Bank filed a timely proof of claim for $9,461.00, asserting a security interest

---

1. The parties stipulated to the facts and exhibits.

2. The customary practice is for an employer to make a "deposit premium" on his worker's compensation insurance. At the expiration of the term of the policy, an audit is made of the employer's payroll and the employer is either billed for any additional premium required or refunded any excess premium paid.

in the return premium.[3] The note of April 30, 1987 recited that it was secured by "ALL PREVIOUS COLLATERAL HELD BY BANK AND INSURANCE POLICY PURCHASED WITH PROCEEDS OF THIS LOAN." No security agreement or financing statement were attached to the Bank's claim, or to the documents filed in this Adversary Proceeding. The Bank does not assert a security interest in the return premium but, rather, it seeks to recover the funds under the equitable doctrine of recoupment. The Trustee denied that the doctrine applied and asserted that the Bank is a general unsecured creditor in the bankruptcy. The parties agreed that if the Bank recovers in this Adversary Proceeding its claim should be correspondingly reduced.

## DISCUSSION

### *Recoupment*

Setoff is specifically recognized by § 553(a) of the Bankruptcy Code.[4] *Collier* describes the distinction between setoff and recoupment as follows:

> Under the legal and equitable principles of setoff, recognized by section 553(a), the mutual debt and claim contemplated are generally those arising from *different* transactions. A setoff is usually asserted for the purpose of reducing or extinguishing the creditor's claim against the debtor, but it has been stated that the defendant may be entitled to a judgment in his favor for any excess over and above the creditor's claim against the debtor.
>
> Recoupment, on the other hand, is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim. 4 *Collier on Bankruptcy* ¶ 553.03 (emphasis in original). (15th Ed. 1981) (citations omitted).

Setoff is not applicable in this case because the Bank does not have possession of the return premium.

 Recoupment applies where the creditor's claim against the debtor arises from the same transaction as the debtor's claim. It is essentially a defense to the debtor's claim against a creditor rather than a mutual obligation. *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984). In bankruptcy the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract. In a number of cases involving the bankruptcy of health care providers, courts have allowed insurors to recoup overpayments from amounts owed to the debtor post-petition under a contract providing for such recoupment. *Id.* In these cases, the analogy is to treatment of executory contracts, in bankruptcy and the courts held that the debtor may not assume favorable aspects of the contract post-petition, and reject unfavorable aspects of the contract which arose prepetition. *Id.* at 875–76. See also *Ashland Petroleum Company v. Appell (In re B & L Oil Company)*, 782 F.2d 155 (10th Cir.1986).

At least one court narrowly defined the "same transaction" by saying that it applied only to the same subject matter in the contract between the parties. *Hoffman v. Connecticut (In re Willington Convalescent Home, Inc.)*, 39 B.R. 781, 791–92 (Bankr.D.Conn.1984).

*In re Nickerson & Nickerson, Inc.*, 62 B.R. 83 (Bankr.D.Neb.1986) is a case in which the Court allowed an insurance agent to recover, under a recoupment theory, return premiums on a worker's compensation policy where the agent had paid the deposit premiums and billed its customer (who subsequently became a debtor in a bankruptcy proceeding) for the premiums. This Court found no cases in which a third

---

**3.** On August 17, 1987 the Debtors paid $339.39 interest on the note. Presumably that is what prompted the extension of the note to October 16, 1987. The Court assumes that the extension to April 27, 1988, which is evidenced only by a notation on the note and not by any extension agreement signed by Mr. Boyd, was an internal bookkeeping arrangement done by the Bank for its own convenience.

**4.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

party lender was allowed to step into the shoes of the debtor for the purposes of recoupment.

 In the instant case, there were at least two transactions. The first was the Bank's loan to Mr. Boyd. The second was Mr. Boyd's purchase of insurance. Clearly the insurance company was obligated to send the return premium to Mr. Boyd as it did and, since the return premium was received post-petition, he was obligated to turn it over to the Trustee-in-Bankruptcy. That he did. It is true that Mr. Boyd represented to the Bank that he was going to use the proceeds of the loan to purchase insurance and, in fact, he did so. That representation and his purchase of insurance did not, however, make the Bank a party to the contract between Mr. Boyd and the insurance company. Since the return premium did not arise out of the same transaction as the loan to Mr. Boyd, recoupment is not applicable.

### Security Agreement

The Debtors' right to receive any return premium under the worker's compensation insurance constituted a "general intangible" of the Debtors.[5] As such the Bank could have taken a security interest in the Debtors' right to the return premium. *See* Tex.Bus. & Comm.Code Ann. § 9.201 *et seq.* (Vernon, 1968). The Bank could have perfected that security interest by filing a financing statement in the office of the Secretary of the State of Texas. Tex.Bus. & Comm.Code Ann. § 9.401 (Vernon, 1989). The parties stipulated that the Bank did not perfect a security interest in the return premium.

ORDER ACCORDINGLY.[6]

---

5. Tex.Bus. & Comm.Code Ann. § 9.106 (Vernon Supp.1989) (the Texas adaptation of the Uniform Commercial Code) contains the following definitions:

"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. "Contract right" means any right to payment under a contract not yet earned by performance and not evidenced by

an instrument or chattel paper. "General intangibles" means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents, instruments, and money...."

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.