In re MIDWAY AIRLINES, INC., Debtor.

Sheldon L. SOLOW, Trustee, Plaintiff,

v.

GREATER ORLANDO AVIATION AU-THORITY, Jacksonville Port Authority, Palm Beach County, Defendants.

Bankruptcy No. 91 B 06449.
Adversary Nos. 93 A 01554, 93 A 01558 and 93 A 01571.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 3, 1994.

Mark L. Prager, Jeffrey S. Norman, Foley & Lardner, Chicago, IL, for defendants Palm Beach County, Jacksonville Port Authority, Greater Orlando Aviation Authority.

Gary S. Caplan, John W. Moynihan, Sachnoff & Weaver, Chicago, IL, for trustee, Sheldon L. Solow.

Sheldon L. Solow, Trustee, Sachnoff & Weaver, Chicago, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motions to strike the fourth affirmative defenses of Greater Orlando Aviation Authority ("GOAA"), Jacksonville Port Authority ("JPA"), and Palm Beach County ("PBC"), (collectively referred to as the "Creditors"), and to strike their counterclaims for recoupment. The motions are brought by Sheldon L. Solow (the "Trustee") as Trustee of the estate of Midway Airlines, Inc. (the "Debtor"), pursuant to Federal Rule of Civil Procedure 12(f) and (h)(2), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012(b). For the reasons set forth herein, the Court grants the Trustee's motions to strike the Creditors' fourth affirmative defenses of sovereign immunity. The Creditors' recoupment counterclaims are dismissed without prejudice to any offset rights of the Creditors or their respective proofs of claim filed in the bankruptcy case.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They constitute core proceedings under 28 U.S.C. § 157(b)(2)(F).

## II. FACTS AND BACKGROUND

The Trustee is the duly appointed and acting Chapter 7 Trustee of the Debtor's estate. The Debtor filed a Chapter 11 petition on March 25, 1991. On November 27, 1991, the case was converted to Chapter 7 and the Trustee was appointed. GOAA is an agency of the municipality of Orlando, Florida. JPA is an independent agency of the combined city-county government of the County of Duval and the City of Jacksonville, Florida. PBC is a county within the state of Florida. Both prior and subsequent to the Debtor filing its Chapter 11 petition, the Debtor and each of the Creditors separately engaged in business. Within the ninety-day pre-petition period, certain payments were allegedly made on account from the Debtor to each of the Creditors pursuant to underlying leases and/or contracts. The Trustee complains that GOAA received two payments in February and March 1991, totalling $156,-239.23. JPA allegedly received one payment in February 1991, for $24,550.34. PBC allegedly received four payments in February and March 1991, aggregating $288,076.11. The Trustee seeks to avoid these payments as preferential transfers under 11 U.S.C. § 547(b) and to recover them or their value under 11 U.S.C. § 550.

On April 22, 1993, GOAA filed an unsecured pre-petition proof of claim totalling $433,497.78. JPA filed an unsecured pre-petition proof of claim dated May 28, 1991, for $12,312.47. PBC filed two proofs of claim: one relating to pre-petition charges for $66,415.39, which was filed May 1, 1991; and a post-petition administrative priority claim filed April 21, 1992, totalling $253,-935.85. The Creditors have answered the Trustee's complaints, and asserted statutory defenses based on 11 U.S.C. § 547(c)(1), (c)(2), and (c)(4). In addition, they have each asserted a fourth non-statutory defense based on sovereign immunity. The Creditors, asserting the doctrine of recoupment, also filed counterclaims for unpaid balances allegedly owed on account from the Debtor.

The Trustee has moved to strike each Creditors' sovereign immunity defense and has moved to dismiss the recoupment counterclaims. The parties have extensively briefed the motions, which involve common issues of law and similar fact patterns, lending to treatment of each motion in this single Opinion.

## III. STANDARDS FOR MOTIONS TO STRIKE AND DISMISS

■ Federal Rule of Civil Procedure 8(c), which is incorporated by reference in Federal Rule of Bankruptcy Procedure 7008(a), requires a responsive pleading to set forth certain enumerated affirmative defenses and "any other matter constituting an avoidance or affirmative defense." The proper procedure by which a plaintiff may challenge an affirmative defense is through a motion to strike. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736–37 (N.D.Ill.1982).

Federal Rule of Bankruptcy Procedure 7012(b), in turn, provides that Federal Rule of Civil Procedure 12(b)–(h) applies in adversary proceedings. Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f).

■ Before a motion to strike can be granted, the Court must "be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Lirtzman v. Spiegel, Inc.*, 493 F.Supp. 1029, 1031 (N.D.Ill.1980) (quoting *Systems Corp. v. American Telephone & Telegraph Co.*, 60 F.R.D. 692, 694 (S.D.N.Y. 1973)). Thus, "to the extent assertions that are labeled "defenses" put into issue relevant and substantial legal and factual questions, they are "sufficient" and may survive a motion to strike even if they might not totally bar the plaintiff's claim." *Donovan v. Robbins*, 99 F.R.D. 593, 596 (N.D.Ill.1983) (citations omitted). A motion to strike will ordinarily be denied where the allegations under attack are of such a character that their sufficiency should not be determined summarily, but should be decided only after a hearing or decision on the merits. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

■ In order for the Trustee to prevail on the dismissal of the counterclaims, it must clearly appear from the pleadings that the Creditors can prove no sets of facts in support of their claims which entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir.1987), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The Court must take as true all well pleaded material facts in the counterclaims and must view those facts and all reasonable inferences, which may be drawn from them, in a light most favorable to the Creditors. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Infinity Broadcasting Corp. v. Prudential Ins. Co.*, 869 F.2d 1073, 1075 (7th Cir.1989). The issue is not whether the Creditors will ultimately prevail on their counterclaims, but whether they have pleaded causes of action sufficient to entitle them to offer evidence in support of their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## IV. DISCUSSION

### A. The Arguments on Sovereign Immunity

The Trustee first argues that the sovereign immunity defenses are determined by applicable federal, not state, law. The Trustee notes that in *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 101–02, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76 (1989), the Supreme Court stated that 11 U.S.C. § 106 refers to immunity under the Eleventh Amendment to the United States Constitution, not any state common law immunity claims. Although the Trustee concedes that in *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) the Supreme Court pointed out that state and federal sovereigns are treated alike for immunity purposes under section 106, the Trustee asserts that the Supreme Court in its discussion of section 106(c), implicated federal law as the basis of immunity afforded the state agency there. The Trustee further contends that even if state com-

mon law sovereign immunity has been properly invoked by the Creditors, the State of Florida's Eleventh Amendment immunity protection is not implicated because any recoveries by the Trustee would not be satisfied from the Florida State Treasury, but from separate funds of the respective Creditors.

The Trustee also argues that the Creditors have cited no Florida cases on point for the proposition that any of them are immune from a bankruptcy trustee's preference avoidance action. Lastly, the Trustee contends that even if the Creditors can properly assert claims of common law based sovereign immunity, the defenses have been effectively waived because the Creditors filed proofs of claim in the bankruptcy case.

The Creditors contend they are entitled to sovereign immunity under applicable Florida state law. According to the Creditors, 11 U.S.C. §§ 106 and 101(27) show a Congressional intent to incorporate state common law sovereign immunity, not just Eleventh Amendment immunity, into the Bankruptcy Code. Notwithstanding their filed proofs of claim, the Creditors contend they have not waived the sovereign immunity defenses because the proofs of claim were filed when the bankruptcy case was in its Chapter 11 phase.

### B. *The Court's Analysis on the Sovereign Immunity Issue*

■ The Creditors' main assertion with regard to the sovereign immunity defenses is that they have sovereign immunity based on Florida common law sovereign immunity. This presumes that Florida law, as opposed to federal law, applies. The Court finds, however, that the Creditors' claims of sovereign immunity are more properly determined with respect to federal, not state law. Any state common or other law to the contrary must defer to the relevant provisions of the Bankruptcy Code enacted by Congress, pursuant to the Supremacy Clause of the United States Constitution. *See* U.S. CONST. art. VI. Furthermore, turning to Florida common law on the sovereign immunity point, the Florida Supreme Court has found there is an important distinction between the applicability of Eleventh Amendment immunity and common law sovereign immunity, where-

by the former applies to state entities in federal court and the latter applies to state entities in state court. *Hill v. Department of Corrections*, 513 So.2d 129, 131–32 (Fla.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). Thus, Florida common law sovereign immunity would not apply to immunize the Creditors from this federal preference avoidance action in federal court.

■ Next, the Court focuses on section 106, which is the relevant Bankruptcy Code provision. *See* 11 U.S.C. § 106. Ironically, the Court notes that section 106 has been recently amended by the Bankruptcy Reform Act of 1994, which became effective October 22, 1994. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 113, 108 Stat. 4106 (1994). Most significantly, the amendment to section 106 applies retroactively. *Id.* § 702(b)(2)(B) ("The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code *before*, on, and after the date of the enactment of this Act.") (emphasis supplied). Section 113 of the Bankruptcy Reform Act provides in relevant part:

Section 106 of title 11, United States Code, is amended to read as follows:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following

(1) Sections ... 106 ... 547 ... 550 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provi-

sions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

Under amended section 106(a), sovereign immunity has been expressly abrogated as to preference avoidance actions (section 547) as well as to avoided transfer recovery actions (section 550). Amended section 106(b) expressly deems the filing of a proof of claim by a governmental unit to constitute a waiver of sovereign immunity with respect to a claim (like a preference claim) that is property of the estate and that arose out of the same "transaction or occurrence" out of which the government unit's claim arose. Therefore, the Court finds that the Creditors' assertions of sovereign immunity should be rejected and the Trustee's motions to strike the affirmative defenses shall be granted.

Moreover, even in the absence of the amendment, the Court finds that the Creditors, under prior compelling case law, have waived their sovereign immunity defenses by filing proofs of claim in the Debtor's bankruptcy case. The majority of cases have held that filing a proof of claim waives the defense of sovereign immunity. *See, e.g., In re University Medical Center,* 973 F.2d 1065, 1086 (3d Cir.1992); *In re 995 Fifth Ave. Assoc., L.P.,* 963 F.2d 503, 509 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992); *In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146, 1150 (9th Cir.1992); *Anderson v. FDIC,* 918 F.2d 1139, 1143–44 (4th Cir.1990). By filing proofs of claim, the Creditors have voluntarily submitted themselves to the equitable jurisdiction of this Court, and coincidentally, have waived the right to have these matters tried before a jury. *See Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 331–32, 112 L.Ed.2d 343 (1990); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58–59, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989); *Katchen v. Landy,* 382 U.S. 323, 326, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). These cases lead to the inevitable conclusion that when creditors voluntarily participate in a debtor's bankruptcy case by filing proofs of claim, they thereby consent to have their rights determined as against the bankruptcy estate, and to have the bankruptcy estate's rights determined as against them. If the constitutional right to trial by jury can be waived by the mere filing of the proof of claim, as noted in *Langenkamp, Granfinanciera,* and *Katchen,* so too can the Creditors' defenses of sovereign immunity. Such a defense is in essence an indirect challenge to the exercise of this Court's *in personam* jurisdiction. Creditors cannot pick and choose at will. Either they assert sovereign immunity and do not file proofs of claim, but stand suit properly asserting such defenses, as was done in *In re Leber,* 134 B.R. 911 (Bankr. N.D.Ill.1991), or as here, they effectively waived the immunity defenses and subjected themselves to the Court's jurisdiction by filing proofs of claim.

The Creditors effectively waived any Florida common law sovereign immunity that they might have had through filing the

proofs of claim. The Court opines that filing a proof of claim would operate as a waiver of sovereign immunity based on the traditional principle of equity that one who avails himself of the benefits of a proceeding in a court of equity has thereby submitted himself to the full equitable jurisdiction of that court. The bankruptcy court is historically considered a court of equity. *See Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934)). Hence, the Creditors have waived whatever Florida common law sovereign immunity they might have had by filing proofs of claim, thereby submitting themselves to the Court's jurisdiction.

Notwithstanding the Court's conclusion that federal law governs these preference avoidance and recovery actions, and aside from the waiver from filing the proofs of claim, the Court finds that even assuming that Florida common law sovereign immunity applies, the Creditors have waived such defenses under Florida law. In Florida, the state itself, as well as various state or governmental agencies and entities, still enjoy sovereign immunity under Florida common law to a certain extent. *See Cauley v. City of Jacksonville,* 403 So.2d 379 (Fla.1981) (tracing the origin of sovereign immunity up to the modern era in Florida). In fact, "[i]n Florida, sovereign immunity is the rule, rather than the exception. . . ." *Pan–Am Tobacco Corp. v. Department of Corrections,* 471 So.2d 4, 5 (Fla.1984). The Florida legislature is constitutionally authorized to waive immunity. *See* FLA. CONST. art. IV, § 19 (1868) (now art. X, § 13). In 1973, the Florida legislature enacted § 768.28 pursuant to this authority. *See* FLA.LAWS ch. 73–313, § 1 (1973). This provision waives sovereign immunity for liability for traditional torts under state law when a private person would be liable for that same act or omission to act. FLA.STAT.ANN. § 768.28 (West 1994). *See also Hill v. Department of Corrections,* 513 So.2d 129 (Fla.1987), *cert. denied,* 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). There is also a cap or ceiling on the amount of liability as well as an exclusion of punitive damages and prejudgment interest. FLA. STAT.ANN. § 768.28 (West 1994).

The Florida Supreme Court has held that "where the state [or one of its subdivisions] has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan–Am Tobacco,* 471 So.2d at 5. The court in *Pan–Am Tobacco* expressly limited its holding to only "suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6. The court then found that while there has been an explicit waiver in tort through section 768.28, there is no analogous waiver in contract. *Id.* at 5. However, the court found that the "legislature has, by general law, explicitly empowered various state agencies to enter into contracts ... [and] it has authorized certain goals and activities which can only be achieved if state agencies have the power to contract for the necessary goods and services." *Id.* (citations omitted). Finally, the court reasoned as follows:

> Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the *legislature has clearly intended that such contracts be* valid and *binding on both parties. As a ·matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless.*

*Id.* (emphasis supplied). Such logic applies in these matters. The Creditors must bear the burden of defense on the Trustee's preference claims if they seek to have their respective proofs of claim allowed and paid in whole or in pro rata part.

Although the decision in *Pan–Am Tobacco* could be read to support an argument that the Creditors have waived their sovereign immunity merely by *entering into* the contracts with the Debtor, the Court declines to adopt such an unnecessarily expansive interpretation. *Pan–Am Tobacco* is distinguishable from the instant matters. Initially, the Court notes that the holding in *Pan–Am Tobacco* was explicitly limited to suits based

on or arising out of express, written contracts. 471 So.2d at 6. Preference actions, however, exist independent of underlying contracts as such actions arise out of the transfer of the debtor's interest in property, and such transfers can occur with or without an underlying contract. *See* 11 U.S.C. § 547. Moreover, the cases at bar are factually distinguishable from the facts in *Pan–Am Tobacco* and its progeny.[1] In contrast to the factual contexts of *Pan–Am Tobacco* and its progeny, the Trustee is not asserting that there has been a breach of contract; he is not asserting a claim based on the contracts themselves; and he is not seeking to enforce the contracts. Rather, the Trustee is merely seeking to recover property preferentially transferred to the Creditors. Consequently, the Court finds that *Pan–Am Tobacco* is distinguishable from the instant matters.

Thus, the Court holds that federal law controls and that under amended section 106 of the Code, sovereign immunity has been abrogated as to preference actions. Furthermore, the Court also holds that even assuming Florida common law sovereign immunity applies, the Creditors have waived such sovereign immunity by filing proofs of claim. Therefore, the Court grants the Trustee's motions to strike the Creditors' affirmative defenses of sovereign immunity.

### C. *The Arguments on the Recoupment Counterclaims*

In support of the motions to dismiss the recoupment counterclaims, the Trustee relies principally on this Court's prior Opinion *Raleigh v. Mid American Nat'l Bank*, 131 B.R. 979 (Bankr.N.D.Ill.1991). The Creditors note that other courts have held that recoupment can be asserted to reduce the damages recoverable by a trustee or debtor-in-possession in preference and fraudulent conveyance cases. They distinguish *Raleigh* on the basis that the transfers sought to be avoided there arose out of different transactions than the recoupment claim, in contrast to the assertions here. The Creditors assert that their claims for unpaid pre-petition invoices all arise out of the same contracts with the Debtor that are the bases of the Trustee's section 547(b) avoidance actions. That assertion is both fatal under amended section 106(b) to the sovereign immunity defense and of no aid in their recoupment counterclaims.

### D. *The Court's Analysis of the Recoupment Counterclaims*

 Under the doctrine of recoupment, a defendant can meet a plaintiff's claim with a countervailing claim that arose out of the same transaction as the plaintiff's claim or cause of action, for the purpose of abatement or · reduction of such claim. *In re Klingberg Schools*, 68 B.R. 173, 178 (N.D.Ill. 1986), *aff'd*, 837 F.2d 763 (7th Cir.1988). As the Court noted in *Raleigh*, recoupment is similar in concept to setoff, but more limited in its application. 131 B.R. at 983. Two limitations on the doctrine of recoupment exist. First, the claims must arise from a single contract or transaction. *In re American Sunlake Ltd. Partnership*, 109 B.R. 727, 730 (Bankr.W.D.Mich.1989); *In re Sluss*, 107 B.R. 599, 602 (Bankr.E.D.Tenn.1989); *In re Fiero Production, Inc.*, 102 B.R. 581, 586 (Bankr.W.D.Tex.1989); *In re Boyd*, 96 B.R. 694, 695 (Bankr.N.D.Tex.1989); *In re Denby Stores, Inc.*, 86 B.R. 768, 782 (Bankr. S.D.N.Y.1988). The second limitation on the doctrine is that there must be some type of "overpayment," whether accidentally made or contractually made. *See In re Public Service Co.*, 107 B.R. 441, 445 (Bankr.D.N.H. 1989) (citing *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986) and *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tenn.1981)). Although these Creditors' recoupment claims may arise out of their "single contract" prepetition relationship with the Debtor, there is no showing that there was any accidental or contractual "overpayment" made by the Creditors to the Debtor. Accordingly, the Trustee's motions to dismiss the recoupment counterclaims are allowed.

Dismissal of the recoupment counterclaims, however, is without prejudice to the Creditors' respective filed proofs of claim,

---

1. *See, e.g., Interamerican Engineers & Constructors Corp. v. Palm Beach County Housing Authority*, 629 So.2d 879 (Fla.4th Dist.Ct.App.1993); *Champagne–Webber, Inc. v. City of Fort Lauder-*dale, 519 So.2d 696 (Fla.4th Dist.Ct.App.1988); and *Southern Roadbuilders, Inc. v. Lee County*, 495 So.2d 189 (Fla.2d Dist.Ct.App.1986).

given the mandate of 11 U.S.C. § 502(h) and amended section 106(c). Section 502(h) provides that:

> A claim arising from the recovery of property under section ... 550 ... of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(h). Thus, if the Trustee prevails in the preference actions, and, given the statutory offset rights of the Creditors per amended section 106(c), if the Creditors thereafter disgorge and return to the estate any preferences avoided under section 547(b) and recovered under section 550(a), they shall then be determined to have claims under section 502(a) or (b) and allowed under section 502(h). Otherwise, section 502(d) applies to their pending proofs of claim.[2]

## V. *CONCLUSION*

For the reasons set forth herein, the Trustee's motions to strike the fourth affirmative defenses and to dismiss the counterclaims of the Creditors are hereby granted. This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered under Federal Rule of Bankruptcy Procedure 9021.

---

2. Section 502(d) provides in relevant part:
 Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section ... 550 of this title or that is a transferee of a transfer avoidable under section ... 547 of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 550 of this title.

11 U.S.C. § 502(d).