GRANT, District Judge.
 

 Edmund Mahern, as Trustee for Merchants Grain, Inc. (hereinafter “MGI”), initiated an adversary proceeding in the bankruptcy court against the defendants, the Ohio Agricultural Commodity Depositors Fund and the Ohio Commodity Advisory Commission, seeking to recover alleged preferential transfers made for the benefit of the Fund in the 90 days preceding the filing of MGI’s bankruptcy petition under 11 U.S.C. §§ 547 and 550. The defendants asserted an Eleventh Amendment defense, and the bankruptcy court dismissed the proceeding. The district court affirmed, and this appeal followed. For the following reasons, we now REVERSE and Remand.
 

 I. Factual Background
 

 The Ohio Agricultural Commodity Depositors Fund was created by the Ohio legislature to indemnify grain depositors (primarily farmers) who lose money due to the insolvency of commodity handlers licensed by the State of Ohio. The money in the Fund comes from a per-bushel fee paid by the depositors to licensed commodity handlers, who in turn remit the money to the Fund. Pursuant to statute, the Fund is a part of the state treasury, and is administered by the Director of the Department of Agriculture. The Ohio Commodity Advisory Commission was established to aid the Director in his duties with respect to the Fund.
 

 During 1990, MGI operated grain elevators and held commodity handlers licenses in Ohio and several other states. In the fall of 1990, MGI purchased large quantities of grain and other commodities at all of its facilities, including its elevator in Columbus, Ohio. MGI bought much of this grain under deferred pricing contracts, taking title to the grain without paying for it or immediately setting a
 
 *632
 
 price. The farmers became unsecured creditors of MGI for the purchasé price of the grain, with the right to set that price and collect their money weeks or months later.
 

 On November 8, 1990, the Ohio Department of Agriculture, fearing that MGI was insolvent, conditionally suspended its license. The Department directed MGI to liquidate all grain stored at its Columbus, Ohio facility to cover MGI’s obligations to Ohio farmers under its deferred payment contracts.
 

 As a result of the Department’s intervention, Ohio farmers were paid over $3 million on antecedent debts within the 90 days preceding MGI’s Chapter 11 petition, money which otherwise would have been paid out of the Fund. Although virtually all Ohio “delayed pricing” depositors were paid as a result of this action, over 700 farmers in three other states, including Indiana, were left with unpaid claims exceeding $19 million.
 

 MGI filed its Chapter 11 petition in bankruptcy on May 9, 1991, and Edmund Mahern was appointed trustee on March 24, 1992. On March 12, 1992, Mr. Mahern initiated an adversary proceeding under 11 U.S.C. §§ 547(b) and 550(a)(1) to recover the preferential transfers made for the benefit of the Fund to Ohio farmers in an amount exceeding $2.7 million. The defendants filed a motion to dismiss, contending that they were immune from suit for monetary damages under the Eleventh Amendment. The bankruptcy court agreed and granted the defendants’ motion.
 

 II. The Eleventh Amendment
 

 A.
 
 The Defendants’ Relationship to the State
 

 At the time oral arguments were heard, the sole issue on appeal was whether the Fund and the Commission were “the State of Ohio” for Eleventh Amendment purposes.
 

 The Trustee contends that the key factor in determining whether a state-created entity is “the State” for Eleventh Amendment purposes has always been the source of funds from which its debts and judgments are paid. He maintains that where, as here, the source of funding does not come from the general revenues of the State, the entity is not an “arm of the State” and, therefore, is not immune from suit.
 

 The bankruptcy court concluded, however, that the real party in interest in this case was clearly the State of Ohio, and that the source of funds from which the recovery would come was, therefore, irrelevant.
 
 Paschal v. Jackson,
 
 936 F.2d 940, 944 (7th Cir.1991), ce
 
 rt. denied,
 
 502 U.S. 1081, 112 S.Ct. 992, 117 L.Ed.2d 152 (1992). We agree.
 

 Where a state-created entity gets the money to pay its debts, including any judgments which may be entered against it, is relevant to an Eleventh Amendment inquiry if the nature of the entity in question is unclear. See
 
 Hess v. Port Authority Trans-Hudson Corp.,
 
 — U.S. —, —-—, 115 S.Ct. 394, 402-406, 130 L.Ed.2d 245 (1994);
 
 Mercer v. Magnant,
 
 40 F.3d 893, 898-99 (7th Cir.1994);
 
 Paschal,
 
 936 F.2d at 944. There can be no doubt in the present case, however, that the State of Ohio is the real party in interest.
 

 Under Ohio law, the Fund is a part of the state treasury, O.S.C. § 926.16(A), and is administered by the Director of the Ohio Department of Agriculture (a state official acting in his official capacity and compensated by the State). O.S.C. § 926.16(D);
 
 Emerson v. Seville Elevator Co.,
 
 38 Ohio App.3d 55, 526 N.E.2d 95, 95 (1987). All claims for indemnification from the Fund are filed with the Director, who assesses the validity of the claim and provides for payment. O.S.C. §§ 926.18(A) and (C). Pursuant to § 926.18(D), “all disbursements from the [F]und shall be paid by the treasurer of state pursuant to vouchers authorized by the Director.” Commission members are appointed by the Director of Agriculture, and serve only in an advisory capacity. O.S.C. § 926.32(A). The Director designates who serves as chairman of the Commission, and may, after notice and public hearing, remove any member for neglect of duty or malfeasance in office. O.S.C. § 926.32(B). The Director provides the meeting space, assistance, services, and data necessary to enable the Commission to carry out its functions. O.S.C. § 926.32(G). The Director also designates “an official or employee of the depart
 
 *633
 
 ment of agriculture to act as the executive secretary of the commission.” O.S.C. § 926.32(1). All costs of the Commission, including all of the expenses of its members and consultants, are paid from the commodity handler regulatory program fund created in section 926.19 pursuant to itemized vouchers which must be approved by the Director. O.S.C. § 926.32(H). O.S.C. § 926.19(C) expressly provides that: “If at any time the moneys deposited in the [regulatory program] fund ... are not sufficient to pay the examination and administrative costs of this chapter, the director shall request an appropriation
 
 from the general revenue fund
 
 to pay those costs.” (Emphasis added).
 

 The relationship between the defendants and the State of Ohio is further clarified in § 926.33(B), which provides:
 

 This chapter is enacted
 
 for the benefit of the state,
 
 and neither the state, its departments, agencies, or commissions, or its employees and officials either elected or appointed, shall be held liable for any injuries to third parties, for the exercise of their authority, or for the use of their discretion on the matters to which this chapter relates.
 

 Section 926.33 thus evidences a clear intent to bring the Fund and the Commission within the protections accorded the State under the doctrine of sovereign immunity. As the bankruptcy court aptly noted: “The state treasurer and the Director, sued in his or her official capacity, and the Department of Agriculture would no doubt be considered ‘the state’ for Eleventh Amendment purposes (which is probably why none were named as a party).” See
 
 Mercer,
 
 40 F.3d at 899 (“a state official sued in an official capacity ... is treated as a ‘state’”);
 
 Allinder v. State of Ohio,
 
 808 F.2d 1180, 1184 (6th Cir.1987) (Ohio Department of Agriculture and Director of Department, when sued in his official capacity, are the “State” for purposes of asserting Eleventh Amendment immunity).
 

 Given the plain language of the Ohio statutes, any judgment rendered against the Fund or the Commission would effectively be a judgment against the State of Ohio. “Where the state gets the money to pay [that] judgment ... is irrelevant ...”
 
 Mercer,
 
 40 F.3d at 899 (citing
 
 Alabama v. Pugh,
 
 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978));
 
 Paschal,
 
 936 F.2d at 944.
 

 B.
 
 Abrogation of Immunity Under 11 U.S.C. § 106
 

 “[A]bsent waiver by the State or valid congressional override,” the Eleventh Amendment would have barred the Trustee’s action against the Fund and the Commission,
 
 Kentucky v. Graham,
 
 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). The Bankruptcy Code, however, contained a waiver provision at the time the defendants’ filed their motion. 11 U.S.C. § 106 provided that:
 

 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit’s claim arose.
 

 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 

 (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
 

 (1) a provision of this title that contains “creditor”, “entity”, or “governmental unit” applies to governmental units; and
 

 (2) a determination by the court of an issue arising under such a provision binds governmental units.
 

 While subsections (a) and (b) unequivocally provided for a waiver of immunity when the “governmental unit” had filed a proof of claim and thereby consented to being sued,
 
 United States v. Nordic Village, Inc.,
 
 503 U.S. 30, 34, 112 S.Ct. 1011, 1014-1015, 117 L.Ed.2d 181 (1992);
 
 Hoffman v. Connecticut Dept. of Income Maintenance,
 
 492 U.S. 96, 101-102, 109 S.Ct. 2818, 2822-2823, 106 L.Ed.2d 76 (1989);
 
 In re Price,
 
 42 F.3d 1068, 1070 (7th Cir.1994);
 
 In re Midway Airlines, Inc.,
 
 175 B.R. 239, 244 (Bankr.N.D.Ill.1994), there was no indication in the present case that the State of Ohio had ever filed a claim against the bankruptcy estate. Which left
 
 *634
 
 subsection (c) as the Trustee’s only line of defense.
 

 In
 
 In
 
 re
 
 McVey Trucking,
 
 812 F.2d 311, 326-327 (7th Cir.),
 
 cert. denied,
 
 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987), we held that § 106(c) clearly applied to preference avoidance actions initiated against a governmental unit under § 547(b), and unequivocally waived the government’s right to assert sovereign immunity as a bar to the proceeding. When the issue came before the Supreme Court two years later, however, the Court took a different viewpoint, and held that § 106(c) did not contain the express and unequivocal language required to effectively abrogate the Eleventh Amendment immunity of the States.
 
 Hoffman,
 
 492 U.S. at 100-104, 109 S.Ct. at 2822-2824. See also
 
 Nordic Village,
 
 503 U.S. at 33-37, 112 S.Ct. at 1014-1016.
 

 Citing
 
 Nordic Village
 
 and
 
 Hoffman
 
 as controlling authority, the bankruptcy court held that, absent the State’s consent, the Eleventh Amendment barred the Trustee’s action to recover the preferential transfers. While that was a correct statement of the law at the time the bankruptcy court issued its decision, the law has since changed.
 

 On October 22, 1994, a month after oral arguments had been completed in this case, the Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, 108 Stat. 4106 (1994), was enacted. One of the key changes effected was the amendment of § 106.
 

 Pursuant to section 113 of the Reform Act, 11 U.S.C. § 106(c) was amended and recodi-fied as § 106(a), and provides:
 

 Waiver of sovereign immunity
 

 (a) Notwithstanding an assertion of sovereign immunity,
 
 sovereign immunity is abrogated as to a governmental unit
 
 to the extent set forth in this section
 
 with respect to
 
 the following:
 

 (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546,
 
 51, 7,
 
 548, 549,
 
 550,
 
 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title. ...
 

 (Emphasis added). 11 U.S.C. § 106(a) (as amended Pub.L. 103-394, Title I, § 113, Oct. 22, 1994, 108 Stat. 4117). The amendment was intended to effectively overrule
 
 Nordic Village
 
 and
 
 Hoffman,
 
 and to “clarify[] the original intent of Congress in enacting Section 106 of the Bankruptcy Code with regard to sovereign immunity.” 140 Cong.Rec. H10752-01, H10772 and H10766. Congress accordingly provided that § 113 was to be applied retroactively to bankruptcy cases which were “commenced
 
 before ...
 
 the date of the enactment”. Pub.L. 103-394, § 702(b)(2)(B) of the Reform Act (set out as a note under 11 U.S.C. § 101).
 

 The defendants do not dispute the fact that the abrogation language in § 106(a) as amended is express and unequivocal, but rather contend that the abrogation provision is invalid because Congress has no authority under the Bankruptcy Clause, Art. I, § 8, cl. 4, to abrogate the States’ Eleventh Amendment immunity. According to the defendants, Congress can override the Eleventh Amendment only when it acts pursuant to § 5 of the Fourteenth Amendment. Defendants contend, in the alternative, that even if Congress has the power, it cannot exercise it retroactively. We disagree.
 

 That Congress can abrogate the States’ Eleventh Amendment immunity when it acts pursuant to the plenary powers accorded it under § 5 of the Fourteenth Amendment is not disputed. See
 
 Dellmuth v. Muth,
 
 491 U.S. 223, 227, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989);
 
 Atascadero State Hospital v. Scanlon,
 
 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985);
 
 Fitzpatrick v. Bitzer,
 
 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). The question before us is whether it may also do so under its Article I plenary powers. We held that it can in
 
 McVey Trucking,
 
 concluding that there was no constitutional basis for distinguishing between the plenary powers accorded Congress under the Fourteenth Amendment and those accorded under Article I.
 
 McVey Trucking,
 
 812 F.2d at 316-323. Accord
 
 United States v. Union Gas Co.,
 
 832 F.2d 1343, 1352 (3d Cir.1987),
 
 aff'd,
 
 491 U.S.
 
 *635
 
 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989);
 
 County of Monroe v. Florida,
 
 678 F.2d 1124 (2d Cir.1982),
 
 cert. denied,
 
 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983);
 
 Peel v. Florida Dept. of Transportation,
 
 600 F.2d 1070, 1080-81 (5th Cir.1979);
 
 Mills Music, Inc. v. Arizona,
 
 591 F.2d 1278 (9th Cir.1979). The Supreme Court reached the same conclusion in
 
 Pennsylvania v. Union Gas Co.,
 
 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).
 

 Justice Brennan, who authored the plurality opinion in which Justices Marshall, Black-mun, and Stevens joined, concluded that:
 

 Like the Fourteenth Amendment, the Commerce Clause with one hand gives power to Congress while, with the other, it takes power away from the States ... that is the meaning, in fact, of a “plenary” grant of authority, and the lower courts have rightly concluded that it makes no sense to conceive of § 5 [of the Fourteenth Amendment] as somehow being an “ultra-plenary” grant of authority. See,
 
 e.g., In re McVey Trucking, supra,
 
 at 316.
 

 Union Gas,
 
 491 U.S. at 16-17, 109 S.Ct. at 2283. Justice White cast the fifth and decisive vote, concluding that Congress did indeed have the authority under Article I to abrogate the States’ Eleventh Amendment immunity.
 
 Union Gas,
 
 491 U.S. at 57, 109 S.Ct. at 2296 (White, J. concurring).
 

 The defendants are quick to point out, however, that there was a vehement dissent in
 
 Union Gas.
 
 Justice Sealia, who authored the dissent on behalf of Chief Justice Rehnquist and Justices O’Connor and Kennedy, would hold that state immunity from suit in federal courts is a “structural component of federalism” that Congress cannot alter by legislation enacted pursuant to its Article I powers.
 
 Union Gas,
 
 491 U.S. at 29-45, 109 S.Ct. at 2289-2290 (Sealia, J., dissenting, joined by Rehnquist, C.J., and O’Connor and Kennedy, JJ.). See also
 
 Hoffman,
 
 492 U.S. at 105, 109 S.Ct. at 2824-2825 (Sealia and O’Connor, JJ., concurring). The dissent reasoned that:
 

 [I]f the Article I commerce power enables abrogation of state sovereign immunity, so do all the other Article I powers. An interpretation of the original Constitution which permits Congress to eliminate sovereign immunity only if it wants to renders the doctrine a practical nullity and is therefore unreasonable. The Fourteenth Amendment, on the other hand, was avowedly directed against the power of the States, and permits abrogation of their sovereign immunity only for a limited purpose.
 

 Union Gas,
 
 491 U.S. at 42, 109 S.Ct. at 2303.
 

 The defendants contend that
 
 Union Gas
 
 was wrongly decided and should not be considered controlling authority in this ease. They note that the composition of the Court has changed significantly since the decision was handed down, with the majority losing two key votes, and surmise that it is only a matter of time before the dissent’s viewpoint becomes the law of the land and
 
 Union Gas
 
 is overturned. The defendants accordingly urge us to adopt what they perceive to be the law of the future. We must decline the invitation.
 

 As the First Circuit noted in
 
 Reopell v. Commonwealth of Massachusetts,
 
 936 F.2d 12, 15-16 (1st Cir.),
 
 cert. denied,
 
 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991): “The battle may not yet be ended, but we are constrained to accept the Court’s majority pronouncements.” See also
 
 In re York-Hannover Developments, Inc.,
 
 181 B.R. 271 (Bankr.E.D.N.C.1995). It is the Court’s holding, not the identities of the justices joining in it, that creates
 
 stare decisis.
 
 See
 
 Payne v. Tennessee,
 
 501 U.S. 808, 844-845, 851-855, 111 S.Ct. 2597, 2619, 2622-2623, 115 L.Ed.2d 720 (1991) (Marshall, J., and Blackmun, J., dissenting).
 

 When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, “the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.... ”
 

 Marks v. United States,
 
 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting
 
 Gregg v. Georgia,
 
 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). It should thus come as no surprise
 
 *636
 
 that virtually every Court of Appeals to have reached the issue since
 
 Union Gas
 
 has concluded that Congress has the authority to abrogate the States’ immunity from suit when legislating pursuant to the plenary powers granted it under Article I of the Constitution. See,
 
 e.g., Ponca Tribe of Oklahoma v. State of Oklahoma,
 
 37 F.3d 1422, 1429-30 (10th Cir.1994),
 
 petition for cert. filed,
 
 63 U.S.L.W. 3477 (Dec. 9, 1994);
 
 Brinkman v. Dept. of Corrections of the State of Kansas,
 
 21 F.3d 370, 371-72 (10th Cir.),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994);
 
 Reich v. State of New York,
 
 3 F.3d 581, 590 (2d Cir.1993),
 
 cert. denied,
 
 — U.S. —, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994);
 
 Hale v. State of Arizona,
 
 993 F.2d 1387, 1391 (9th Cir.),
 
 cert. denied,
 
 — U.S. —, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993);
 
 State of New York v. United States,
 
 942 F.2d 114, 121 (2d Cir. 1991),
 
 aff'd in part and rev’d in part,
 
 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992);
 
 Reopell,
 
 936 F.2d at 15-16.
 
 [1]
 
 We find no basis for holding otherwise today.
 

 The defendants’ perfunctory challenge to the retroactive application of § 113 deserves little comment. The Fund and Commission contend that they would be unduly prejudiced if the amendment were to be applied retroactively to their case because it would allow the Trustee to pursue a cause of action which otherwise would have been barred by the applicable statute of limitations. They are incorrect.
 

 The issue before the court is not whether the change in the law effected by the Reform Act would allow the Trustee to bring a
 
 new
 
 adversary proceeding against the defendants, but whether it precluded dismissal of the old one. If the retroactive application of § 113 is constitutional, and we must presume that it is,
 
 Pension Benefit Guaranty Corp. v. R.A Gray & Co.,
 
 467 U.S. 717, 729, 104 S.Ct. 2709, 2717-2718, 81 L.Ed.2d 601 (1984); Usery
 
 v. Turner Elkhom Mining Co.,
 
 428 U.S. 1, 15-26, 96 S.Ct. 2882, 2892-2897, 49 L.Ed.2d 752 (1976), the judgment of dismissal must be reversed.
 
 [2]
 

 Plaut v. Spendthrift Farm, Inc.,
 
 — U.S. -, -, 115 S.Ct. 1447, 1457, 131 L.Ed.2d 328 (1995) (when Congress has expressly provided that a new law is to be applied retroactively we “must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly”). See also
 
 United States v. Schooner Peggy,
 
 5 U.S. (1 Cranch) 103, 109, 2 L.Ed. 49 (1801);
 
 Landgraf v. USI Film Products,
 
 — U.S. —, —-—, 114 S.Ct. 1483, 1500-1508, 128 L.Ed.2d 229 (1994);
 
 Carpenter v. Wabash R. Co.,
 
 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (amendment to Bankruptcy Act effected while case was pending on petition for writ of certiorari given effect where amendment expressly provided for retroactive application);
 
 In re Anton Motors, Inc.,
 
 177 B.R. 58 (Bankr.D.Md. 1995) (section 106 as amended by the Bankruptcy Reform Act of 1994 applicable where bankruptcy case commenced before the statute’s enactment, and even though statute of limitations for initiating adversary proceedings expired before the change in the law was effected); but see
 
 In re Bison Heating & Equipment, Inc.,
 
 177 B.R. 785 (Bankr. W.D.N.Y.1995).
 

 “A challenged statute is constitutional so long as its retroactive application— like any future application — is justified by a ‘legitimate legislative purpose furthered by rational means.’ ”
 
 Long Island Oil Products Co., Inc. v. Local 553 Pension Fund,
 
 775 F.2d 24, 27 (2d Cir.1985) (quoting
 
 Pension Benefit Guaranty,
 
 467 U.S. at 729, 104 S.Ct. at 2717-2718). The burden is on the defendants in this case, as the parties asserting a
 
 *637
 
 constitutional violation, to establish that Congress acted in an arbitrary and irrational manner. See
 
 Turner Elkhorn Mining Co.,
 
 428 U.S. at 15, 96 S.Ct. at 2892. The defendants’ unfounded allegations of prejudice fall far short of the mark.
 

 Defendants do not dispute the fact that the retroactive application of § 113 furthers a legitimate legislative purpose, nor could they. Section 113 was applied retroactively for a very simple reason: Congress had always intended 11 U.S.C. § 106 to be a comprehensive waiver of sovereign immunity and wanted to clarify that point once and for all. 140 Cong.Rec. H10752-01, H10772 and H10766. In doing so, Congress effectively advanced the general purpose of the bankruptcy system by “enforcing a distribution of the debt- or’s assets in an orderly manner in which the claims of all creditors are considered fairly, in accordance with established principles rather than on the basis of the inside influence or economic leverage of a particular creditor.” H.R.REP. 103-835. State and Federal governments “must abide by the regular processes of the bankruptcy court applicable to all claimants.” 140 Cong.Rec. H10752-01, H10772.
 

 III. Conclusion
 

 We conclude on the basis of the foregoing discussion that Congress has the authority to abrogate the Eleventh Amendment when it acts pursuant to the powers accorded it under the Bankruptcy Clause, Art. I, § 8, cl. 4; that it expressly and unequivocally did so when it enacted § 113 of the Reform Act, 11 U.S.C. § 106; and that § 113 applies retroactively to this case. Accordingly, the judgment is Reveksed and the cause REMANDED.
 

 [1]
 

 . But see
 
 Seminole Tribe of Florida v. State of Florida,
 
 11 F.3d 1016, 1023 (11th Cir.1994) (recognizing that Congress has specifically abrogated the Eleventh Amendment defense when legislating pursuant to § 5 of the Fourteenth Amendment and its Article I, § 8 plenary power over commerce, but refusing to extend authority to abrogate to legislation enacted pursuant to the Indian Commerce Clause (the Indian Gaming Regulatory Act)).
 

 [2]
 

 . To the extent 11 U.S.C. § 106(a) could be read to require federal courts to reopen final judgments entered before the Reform Act was enacted, it may indeed be subject to a constitutional challenge, see
 
 Spendthrift Farm,
 
 - U.S. -, -, 115 S.Ct. 1447, 1451-1463, 131 L.Ed.2d 328 (1995). That is not the case before us, however, as the judgment of the Bankruptcy Court is not yet final.