In re HPA ASSOCIATES, Debtor.

The EMPLOYMENT DEVELOPMENT DEPARTMENT OF the STATE OF CALIFORNIA, Appellant,

v.

James J. JOSEPH, Chapter 7 Trustee, Appellee.

BAP No. CC–93–2252–OHMe.
Bankruptcy No. SA 87–02351–JR.
Adv. No. SA 90–0919–JR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 18, 1995.

Decided Dec. 20, 1995.

**168**

Raymond B. Jue, Los Angeles, CA, for Appellant.

Stanley Minier, Santa Ana, CA, for Appellee.

Before: OLLASON, HAGAN and MEYERS, Bankruptcy Judges.

### OPINION

OLLASON, Bankruptcy Judge:

In this case, a state taxing authority has challenged the jurisdiction of the bankruptcy court to abrogate the state's sovereign immunity by rendering a money judgment against

---

1. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy

it. The agency made a demand upon an escrow company for payment of taxes owed by the debtor's partner, and was paid approximately $69,000 from estate funds. The Chapter 7[1] trustee sued for return of the funds, and the bankruptcy court granted judgment in the trustee's favor. WE AFFIRM.

### STATEMENT OF FACTS

*Background*

In 1977, an investment entity was formed to purchase the Holiday Inn Hotel, in Palmdale, California. Holiday Palmdale Associates ("Holiday") became the owner of the hotel and ground lease covering the property and improvements. One of the partners of Holiday was SMC Motor Inns, Inc. ("SMC"). In 1983, SMC was sold to a group of investors that included Richard McDermott ("McDermott"), SMC's president.

In 1978, the partners agreed that SMC would take over full operation of the hotel under the lease for its own benefit. From that point on, Holiday was the landlord who leased out to the tenant, SMC, who operated the business. SMC agreed to pay rents to Holiday and to pay all operating expenses. In turn SMC would receive excess profits in addition to its interest as a partner in the ownership of the hotel and lease. Holiday's only expense obligation was payment of the investment loans.

In 1978, SMC bought out all interests in Holiday except for a 29.4% interest of Marvin Fineman ("Fineman"). At that point, Fineman and SMC formed a new partnership, H.P.A. Associates ("HPA"). The position of landlord was transferred to HPA pursuant to an addendum to the original lease. SMC continued the same management and operational functions.

A new liquor license was issued in SMC's name alone, whereas the former license included the names of Fineman and other partners as well as SMC. A liquor license had never been issued in HPA's name.

Code, 11 U.S.C. §§ 101–1330.

SMC, not HPA, was registered as an employer with the California Employment Development Department ("EDD"). EDD is responsible for collecting unemployment insurance taxes from employers operating in California. Employers are required to file tax returns with EDD detailing the amount of taxes owed based upon the wages they pay. EDD had a record of tax returns filed by SMC; it did not have a file on or record of HPA as a registered employer during the years 1982–1987.

SMC incurred tax liability to EDD for the years 1982 through 1987 in the amount of $68,513. In 1986, EDD issued deficiency assessments in that amount and recorded tax liens against SMC. On July 3, 1987, EDD placed a hold on the transfer of SMC's liquor license.

*Events in Chapter 11*

On April 16, 1987, an involuntary Chapter 11 petition was filed against HPA; an order for relief was entered on May 22, 1987. EDD was a scheduled creditor and was listed on the master mailing list.[2] Allegedly because of SMC's employer relationship with EDD, EDD did not file a formal proof of claim in the HPA bankruptcy.

During HPA's Chapter 11 case, HPA received an offer to buy back its and SMC's respective interests in the hotel and land lease, including the liquor license, in the total amount of $400,000. To accomplish this sale, two escrows were opened on May 25, 1988, as follows: $380,000 was deposited into escrow no. 1309 in the name of HPA for its interest in the hotel and land lease, and $20,000 was deposited into escrow no. 1310 in the name of SMC for the liquor license.[3]

On August 11, 1988, the bankruptcy court, upon application by HPA, entered an order authorizing the sale. The order specifically stated that the sale would be "free and clear of any claim of lien by the ... [EDD] ...

with said liens, if any, attaching to the proceeds of sale pending further order of this court."

EDD did not appear at the hearing on the sale, nor did it file an objection, although it received notice of the proceedings.

The following events are pivotal.

According to EDD's representative, the escrow company called EDD and asked them for a payoff demand for the liens referenced under SMC's numbers. The purpose of the request was to facilitate the transfer of the liquor license as part and parcel of the sale. In his declaration, SMC president McDermott stated that on August 29, 1988,

> [o]n behalf of SMC itself and in its capacity as one of the partners of HPA, I executed amended escrow instructions.... The proposed buyer also signed those amended instructions. One of the purposes of this particular amendment was to permit the use of the funds in [escrow no. 1309] to be used to pay all tax claims necessary for the transfer of the subject liquor license in the other escrow.

No court order was obtained by SMC or HPA, or anyone, authorizing such a payment. EDD did not seek to modify the automatic stay in the HPA case.

On and between August 30 and September 1, 1988, EDD sent and the escrow company received EDD's notice and demand for $68,-513.37. The demand letter referenced SMC's payroll account number as well as escrow no. 1310 (SMC's liquor license escrow). It referenced SMC as the "transferor." It was addressed to "The Escrow Store." HPA was not mentioned anywhere in the letter.

By postpetition check dated November 2, 1988 and drawn against HPA's escrow no.

---

2. Why EDD was considered a creditor of HPA was never resolved below. Apparently, SMC was indebted to EDD pursuant to its status as employer, not HPA. EDD argued below that they believed HPA should have registered as the employer, but the court sustained objections to that testimony.

3. The liquor license was not transferred until 1989, after SMC filed a Chapter 7 bankruptcy petition, and the SMC Chapter 7 trustee transferred the $20,000 to a new escrow account. The liquor license was ultimately sold to the same buyer, and EDD received a pro rata payment of $5,045.25.

1309, EDD received payment for $69,714.[4] EDD released the withhold on the liquor license, negotiated the check, and credited SMC's payroll account.

*Events in Chapter 7*

HPA's bankruptcy case was converted to one under Chapter 7 on December 21, 1988, and James Joseph was appointed the Chapter 7 trustee ("the trustee").

On October 31, 1990 (just under two years after the transfer), the trustee filed a complaint: 1) to avoid the postpetition transfer under § 549; 2) to avoid and recover a fraudulent transfer under §§ 544 and 550; 3) for turnover of funds under § 542; 4) for return of improper and excessive dividend paid by virtue of the state's informal proof of claim; 5) for reconsideration and disallowance of the state's proof of claim; 6) for unauthorized transfer of partnership property; 7) for declaratory relief finding that the debt was not HPA's; 8) for a determination of tax liability under § 505; 9) and to avoid a lien under § 506(d).

On October 15, 1991, the parties filed an amended joint pretrial statement. Absent from the pretrial statement, among the triable issues, was whether EDD violated the automatic stay or whether the demand and/or payment was void as a violation of the automatic stay pursuant to § 362.

The matter was taken under submission after trial on October 15, 1991. Among its defenses, EDD argued that it had not waived its sovereign immunity under the Eleventh Amendment. The trustee requested orally to amend the pretrial stipulation to include the issue of whether the payment was void as a violation of the automatic stay. EDD objected, and the bankruptcy court did not orally rule on the matter.

4. The difference between the $68,513 EDD assessed and the $69,714 it received is attributable to additional accrued interest for the period between the original demand and actual payment.

5. EDD has raised a fourth issue, that is whether the bankruptcy court abused its discretion by ruling on the stay violation issue when that issue was not part of the joint pretrial order and the court had not expressly granted an oral request to amend the pleading. However, HPA has not

On January 2, 1992, the bankruptcy court entered its Memorandum Opinion, concluding that EDD had waived its sovereign immunity by making a demand for payment on HPA's escrow. This action was tantamount to filing a claim in HPA's bankruptcy because it constituted self-help, the court held, citing *In re Town & Country Home Nursing Services, Inc.*, 112 B.R. 329 (9th Cir. BAP 1990), *aff'd*, 963 F.2d 1146 (9th Cir.1991) (offsetting of future payments due the debtor because of alleged Medicare overpayments was a waiver of the federal government's sovereign immunity as well as an informal proof of claim). The opinion directed the trustee to lodge the proposed order and findings of fact and conclusions of law.

Due to counsel's omission, the form of order and findings of fact and conclusions of law were not lodged until October 14, 1993. On October 19, 1993, the bankruptcy court entered a money judgment in favor of the trustee for $69,714 plus interest, and the findings of fact and conclusions of law. The bankruptcy court based its judgment on the conclusions that the transfer was an improper postpetition transfer in violation of § 549, that the estate was entitled to turnover of the payment pursuant to § 542, and that the bankruptcy court had authority under § 505 to determine that HPA was not liable for taxes to EDD and to order the return of the payment. In addition, the court held that the payment was void, having been made in response to a demand without relief from the automatic stay, § 362. EDD timely appealed.

## ISSUES [5]

1. In light of amended § 106, whether Congress had the Constitutional authority to abrogate EDD's Eleventh Amendment right to sovereign immunity pursuant to the Bankruptcy Clause—Article I, Section 8, Clause 4 of the United States Constitution.[6]

demanded damages for an alleged violation. Therefore, in light of our decision we consider this issue superfluous and do not consider it.

6. This provision empowers Congress to "establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

2. In the alternative, whether EDD waived its sovereign immunity by making a demand upon HPA's escrow account.

3. Whether EDD is otherwise entitled to keep the payment by virtue of its perfected liens against SMC.

## STANDARD OF REVIEW

The granting or denial of a sovereign immunity defense is an issue of law subject to *de novo* review. *Seminole Tribe of Florida v. State of Florida,* 11 F.3d 1016, 1021 (11th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995); *In re Vanguard Mfg. Co.,* 145 B.R. 644, 646 (9th Cir. BAP 1992). We review factual findings on jurisdictional issues for clear error. *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir.1994). Mixed questions of law and fact are reviewed *de novo. In re Wade,* 115 B.R. 222, 225 (9th Cir. BAP 1990), *aff'd,* 948 F.2d 1122 (9th Cir.1991).

## DISCUSSION

*Events Subsequent to Appeal*

On October 22, 1994, President Clinton signed the Bankruptcy Reform Act of 1994 that became effective immediately, and retroactively changed the prior law regarding the waiver of sovereign immunity. *See* 11 U.S.C. § 106; Pub.L. No. 103–394, §§ 113, 702(b)(2)(B), 108 STAT. 4117–18, 4150 (Oct. 22, 1994). Section 702(b)(2)(B) provides that the amendments "shall apply with respect to cases commenced under title 11 of the United States Code before, on, and after the date of the enactment of this Act." Thus, the provisions of new § 106 are applicable to this adversary proceeding.[7]

The effect of the amended § 106(a) was to *abrogate* a state's sovereign immunity as to both monetary and nonmonetary judg-

ments, except punitive damages. Section 106(a) provides, in pertinent part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

11 U.S.C. § 106(a).

The new § 106(b), on the other hand, expanded the right of sovereign immunity by overruling prior law that held that the mere

---

7. EDD cites a Texas bankruptcy case which holds that the amendment plainly retroactively applies only to "cases" and not to "proceedings." *In re Craftsmen, Inc.,* 183 B.R. 116, 117–18 (Bankr.N.D.Tex.1995). We do not agree with that holding because the purpose of the retroactive provision was "to clarify that ... Congress had always intended 11 U.S.C. § 106 to be a

comprehensive waiver of sovereign immunity." *See In re Merchants Grain, Inc.,* 59 F.3d 630, 637 (7th Cir.1995). In addition, that the amendment abrogates sovereign immunity with respect to specific Code provisions under which such proceedings may arise strongly suggests that the amendment was intended to apply retroactively to those proceedings within the case.

existence of a claim or a claim asserted through conduct could constitute the deemed waiver of sovereign immunity under former § 106(a), now § 106(b), as revised. *See In re AER–Aerotron, Inc.,* 181 B.R. 268, 269 (Bankr.E.D.N.C.1995). Section 106(b) provides:

> (b) A governmental unit *that has filed a proof of claim in the case* is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b) (emphasis added).

In enacting the new provision, Congress effectively overruled two Supreme Court cases that had limited and denied the waiver of sovereign immunity, namely *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (a bankruptcy court could not enter a money judgment against a state that had not filed a proof of claim) and *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (former § 106(c) did not waive the sovereign immunity of the United States for an action seeking a monetary recovery in bankruptcy because the waiver was not "unequivocally expressed"). *Id.* at 32–34, 112 S.Ct. at 1014; *see also* H.R. Rep. No. 103–835, 103d Cong., 2nd Sess. 42 (Oct. 4, 1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3350–51.

### 1. Abrogation of Sovereign Immunity

EDD contends that the amendment to § 106 is unconstitutional in that it purports to abrogate EDD's sovereign immunity as a bar against a monetary judgment. It contends that there is an "open question" whether Congress had authority to abrogate sovereign immunity under its Article I plenary Bankruptcy Clause powers.

Only a few bankruptcy cases have analyzed this issue so far. The consensus of those is that, until the Supreme Court says otherwise, § 106 is a valid jurisdictional provision. *See: In re Merchants Grain, Inc.,* 59 F.3d 630 (7th Cir.1994); *In re J.F.D. Enterprises, Inc.,* 183 B.R. 342 (Bankr.D.Mass.1995); *In re York–Hannover Developments, Inc.,* 181 B.R. 271 (Bankr.E.D.N.C.1995) (relying on the Seventh Circuit's case *In re McVey Trucking, Inc.,* 812 F.2d 311 (7th Cir.), *cert. denied sub nom. Edgar v. McVey Trucking Co.,* 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987)); and *In re Operation Open City, Inc.,* 170 B.R. 818 (S.D.N.Y.1994).

The Eleventh Amendment of the Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

■ However, a federal court may exercise jurisdiction (a) where Congress has abrogated a state's immunity or (b) where a state has waived its immunity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

■ To be valid, Congressional abrogation of immunity must satisfy two requirements. First, Congress' intent to abrogate immunity must be "unmistakably clear." *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 7, 109 S.Ct. 2273, 2277, 105 L.Ed.2d 1 (1989) (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Second, the Constitutional provision pursuant to which Congress enacts a statutory scheme allowing for abrogation must confer on Congress the power to override the Eleventh Amendment. *See Union Gas,* 491 U.S. at 13–23, 109 S.Ct. at 2280–86.

To date, the United States Supreme Court has decided two seminal cases that specifically address the adequacy of the Constitutional power under which Congress may enact law that abrogates the Eleventh Amendment. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court held that Congress may create a cause of action for money damages enforceable against a nonconsenting state when it acts pursuant to its powers under § 5 of the Fourteenth

Amendment.[8] In *Union Gas,* a plurality held that Congress also has the power to abrogate Eleventh Amendment sovereign immunity when acting under its Article I, Section 8 plenary power over commerce (the Commerce Clause).[9]

In a scholarly opinion, prior to the amendments to § 106, the Seventh Circuit in *McVey Trucking,* concluded that there was no Constitutional basis for distinguishing between the plenary powers granted Congress under the Fourteenth Amendment and those granted under Article I. *McVey Trucking,* 812 F.2d at 316–23. Several other circuit courts, including the Ninth Circuit Court of Appeals, were in accord. *See: United States v. Union Gas Co.,* 832 F.2d 1343, 1352 (3d Cir.1987), *aff'd,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989); *County of Monroe v. State of Fla.,* 678 F.2d 1124, 1131–32 (2nd Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983); *Peel v. Florida Dept. of Transp.,* 600 F.2d 1070, 1080–81 (5th Cir.1979); *Mills Music, Inc. v. State of Ariz.,* 591 F.2d 1278, 1285 (9th Cir. 1979).

The Supreme Court reached the same conclusion in the 1989 plurality opinion in *Union Gas.* Justice Brennan wrote for Justices Marshall, Blackman and Stevens:

> Like the Fourteenth Amendment, the Commerce Clause with one hand gives power to Congress while, with the other, it takes power away from the States ... that is the meaning, in fact, of a "plenary" grant of authority, and the lower courts have rightly concluded that it makes no sense to conceive of § 5 [of the Fourteenth Amendment] as somehow being an "ultraplenary" grant of authority.

*Union Gas,* 491 U.S. at 16–17, 109 S.Ct. at 2283.

Justice White cast the decisive vote, agreeing that "Congress has the authority under Article I to abrogate the Eleventh Amendment immunity of the States." *Id.* at 57, 109 S.Ct. at 2296.

EDD and others who would disagree with the plurality opinion find support in the vehement dissent in *Union Gas* of Justice Scalia on behalf of Chief Justice Rehnquist and Justices O'Connor and Kennedy. He stated:

> We have never gone thumbing through the Constitution, to see what *other* original grants of authority—as opposed to Amendments adopted after the Eleventh Amendment—might justify elimination of state sovereign immunity. If private suits against States, though not permitted under Article III (by virtue of the understanding represented by the Eleventh Amendment), are nonetheless permitted under the Commerce Clause, or under some other Article I grant of federal power, then there is no reason why the other limitations of Article III cannot be similarly exceeded. That Article would be transformed from a comprehensive description of the permissible scope of federal judicial authority to a mere default disposition, applicable unless and until Congress prescribes more expansive authority in the exercise of one of its Article I powers. That is not the regime the Constitution establishes.

*Union Gas,* 491 U.S. at 40, 109 S.Ct. at 2301–2302 (dissenting opinion).

On January 23, 1995, the Court granted certiorari in an Eleventh Circuit nonbankruptcy case which decided that Congress did not have authority to abrogate the state's sovereign immunity under the Indian, versus the Interstate, Commerce Clause. Both of these clauses derive from the same grant of plenary power to Congress in Article I, Section 8, Clause 3, but have distinct legal interpretations. *Seminole Tribe of Florida v. State of Fla.,* 11 F.3d 1016, 1025 n. 9, 1027–28 (11th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995). The

---

**8.** Section 5 grants Congress the power to enforce, by legislation, the provisions of the Fourteenth Amendment, which state, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

**9.** This provision grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3.

*Seminole* appeal advocates a narrow interpretation of *Union Gas,* confining its holding to the Interstate Commerce Clause.

■ Until a decision is rendered otherwise, we are satisfied that *Union Gas,* and concurring circuit law, reflects the current interpretation that Congress' plenary powers under Article I did empower it to abrogate sovereign immunity pursuant to the Bankruptcy Clause mandate to establish uniform bankruptcy laws, and to so amend § 106(a). As one bankruptcy court has stated:

> To hold the amended § 106(a) unconstitutional "would severely impair Congress' plenary power to regulate bankruptcies."

*York–Hannover,* 181 B.R. at 278 (quoting *McVey Trucking,* 812 F.2d at 328).

■ As applied to this case, EDD's right to sovereign immunity was waived inasmuch as the bankruptcy court entered a money judgment against it pursuant to any or all of the provisions § 505, § 542 and § 549.

### 2. Did EDD Waive its Sovereign Immunity

Because we hold that EDD's sovereign immunity was abrogated by § 106(a), we need not address the alternate issue of whether EDD's written demand upon the escrow company constituted an informal proof of claim against HPA's estate that waived its sovereign immunity pursuant to § 106(b).

### 3. EDD's Lienholder Status

■ EDD contends that as a judgment creditor of SMC[10] it was entitled to keep the payment because it had liens on SMC's partnership assets and it was entitled to use the remedies of a charging order and/or execution and levy. There is no merit to this argument because EDD did not obtain a charging order pursuant to the requirements of Cal.Corp.Code § 15028 (West 1991). Nor did it have issued a warrant or levy upon the assets pursuant to Cal.Civ.Proc.Code §§ 688.020 to 688.030 (West 1987). These provisions may have provided a remedy for

EDD, but it had not taken the steps necessary under those provisions at the time it received the payment.

### CONCLUSION

Current case law from the circuit courts and the Supreme Court indicates that Congress acted within its plenary Article I powers to amend § 106 of the Bankruptcy Code in order to abrogate the state's sovereign immunity as to specific Code sections. At least three of these sections were pled by the trustee in the complaint to recover a payment made to EDD from HPA's escrow account. Therefore, EDD's sovereign immunity defense was unavailable.

EDD had not taken steps to enforce its liens on SMC's property before it received the payment from HPA. Therefore, it had no right under state law to retain the funds.

The bankruptcy court's order for judgment against EDD is

**AFFIRMED.**

---

10. EDD is a judgment creditor pursuant to Cal. Civ.Proc.Code § 688.040(a) (West 1987), which provides: " 'Judgment creditor' or 'creditor' means the state or the department or agency of the state seeking to collect the liability [under the Unemployment Insurance Code]."